UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

FRANK BELLEZZA,

             Plaintiff,                     09 Civ. 8434

   -against-                           OPINION

D. HOLLAND;
L. CLARK;
R.J. CUNNINGHAM;
B. FISCHER,

             Defendants.

------------------------------------------X

A P P E A R A N C E S:

         Pro Se

         FRANK BELLEZZA, 97A4585
         Orleans Correctional Facility
         3531 Gaines Basin Road
         Albion, New York 14411

         Attorney for Defendants

         ANDREW M. CUOMO
         Attorney General of the State of N.Y.
         120 Broadway, 24th Floor
         New York, NY  10271
         By:  Kevin R. Harkins, Esq.
              Assistant Attorney General

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/12/11

**Sweet, D.J.**


        Defendants D. Holland ("Holland"), L. Clark ("Clark"),
S. Katz ("Katz"), R.J. Cunningham ("Cunningham") and B. Fischer
("Fischer") (collectively, the "Defendants") have moved pursuant
to  Federal  Rules  of  Civil  Procedure  12(b)(6)  to  dismiss  the
Amended Complaint of plaintiff Frank Bellezza ("Bellezza" or the
"Plaintiff") alleging a violation of 42 U.S.C. § 1983.  Upon the
conclusions set forth below, the motion is granted in part and
denied in part.


**Prior Proceedings**


        The complaint in this action was filed by Plaintiff,
an  inmate  at  the  Orleans  Correctional  Facility,  <u>pro</u> <u>se</u>  on
October 5, 2009.  It alleged that Holland and Clark, in concert
with the remaining Defendants, withheld legal documents pursuant
to  a  policy  "instituted  and  enforced"  by  Holland,  whereby
Plaintiff "is and shall be subjected to disciplinary action" if
he  participates  in  any  civil  litigation  and  "is  required  to
prove  any  allegations  raised  in  legal  claims  to  an  unspecified
burden  of  proof  set  arbitrarily  by  Holland."   (Compl. ¶ 15.)
Specifically, Plaintiff alleged that Clark opened mail addressed
to Plaintiff on April 15, 2009 and withheld a check for $55.98

(the "Settlement Check") contained in the mailing, with the knowledge and consent of the remaining Defendants and did not issue a receipt for the Settlement Check following its confiscation. (Id. ¶¶ 16-18, 20.) Plaintiff also alleged that on April 21, 2009, as a result of having received the Settlement Check, he was issued an Inmate Misbehavior Report ("IMR") by Holland, charging him with 103.20 Solicitation, 111.10 Impersonation, 180.11 "Correspondence Rule Violation," 107.20 Lying, and 180.17 "Unauthorized Legal Assistance." (Id. ¶ 21.) He was found guilty of the charges and on appeal his penalty was modified, but not vacated. (Id. at ¶ 25.) The complaint alleged that Plaintiff is precluded from participating in future, unspecified class actions because he could "reasonabl[y] expect[] to be subjected to disciplinary action" if he did so. (Id. at ¶ 28.)

On February 19, 2010, Defendants moved to dismiss the original complaint. On July 27, 2010, the Court dismissed the Complaint with leave to replead within 40 days, on the grounds that Plaintiff's (1) denial of access to the courts by interference with legal mail and (2) First Amendment violation by the denial of the free flow of mail claims had not been adequately alleged, and because Plaintiff's claim for deprivation of property was precluded because adequate state law

4

remedies existed which he had not pursued. The Court additionally dismissed the claims against Katz, Cunningham and Fischer for failure to allege their personal involvement in the alleged constitutional deprivations.

On August 18, 2010, Plaintiff filed an Amended Complaint. On October 8, 2010, Defendants moved to dismiss the amended complaint. The instant motion was marked fully submitted on December 15, 2010.

**Allegations Asserted in the Amended Complaint**

The Amended Complaint alleges that on at least two separate occasions, defendants Clark and Holland opened, read, photocopied, and withheld Plaintiff's privileged legal correspondence outside of his presence, in violation of New York State Department of Correctional Services regulations and federal caselaw. (Amend. Compl. ¶ 10.) Specifically, Plaintiff alleges that on April 15, 2009 Clark opened, read, photocopied, and withheld mail from the Court Appointed Settlement Administrator in the class action of <u>Wilson v. Airbourne</u>, of which Plaintiff alleges he was a class member (<u>id.</u> ¶ 11), and that Clark and Holland withheld the Settlement Check enclosed in that correspondence (<u>id.</u> ¶ 15). Plaintiff asserts that on

another separate occasion Defendant Clark opened, read, copied, and withheld legal correspondence in connection with a class action of "TRACK 1 AWP" of which Plaintiff alleges he was a class member. (Id. ¶ 18.)   Plaintiff further asserts that the practice of opening, reading, copying, and withholding legal correspondence was "wide spread" and included the same with regard to legal mail related to the class action of Wilson v. Airbourne sent to inmates Marcelo Rogriguez, DIN#: 76-A-3247, Francisco Jaureuqi, DIN#: 87-A-2530, and Juan Martinez, DIN#: 90-A-3108.  (Id. ¶ 14.)

Plaintiff also alleges Holland and Clark fabricated rules "requiring inmates to get permission from the facility superintendent before corresponding with court appointed settlement administrators, participating in civil litigation, or receiving court authorized settlement funds" (id. ¶ 17), and that Holland created a policy requiring inmates to "prove their legal claims to [the Department of Correctional Services] before raising same in a legal claim" (id. ¶ 18).   Plaintiff states that the Central Office Review Committee advised that no such policy exists, in response to grievances which Plaintiff filed (WB-14580-09 and WB-14578-09).  (Id. ¶ 19.)   Plaintiff asserts that nonetheless Holland subjected him to disciplinary action, resulting in the loss of good time, placement in Special Housing

6

at the Southport Correctional Facility, and the confiscation of the Settlement Check. (Id. ¶ 20.)

Plaintiff avers that the Defendants' actions "did deter Plaintiff from taking part in any additional class action lawsuit settlements and continue[s] to do so." (Id. ¶ 24.) Specifically, Plaintiff states that his claim in the Airbourne action was not frivolous and had been approved by the Court appointed settlement administrators and that he "is qualified to take part in several other class action claims, including" against De Beers Diamonds and Air Cargo Shipping companies, as well as with regard to AWP Track 2 prescription drugs and "untold others." (Id. ¶ 28.)

Plaintiff disclaims pursuing a property claim in his amended complaint (AC ¶ 33), and abandons any claims against Defendants S. Katz, R.J. Cunningham, and B. Fischer (AC ¶ 7). Plaintiff likewise disclaims seeking reinstatement of any good time. (Pl. Reply ¶ 6).

**The Law of the Case Doctrine Does Not Control The Outcome Here**

At the threshold, Defendants assert that the Amended Complaint should be dismissed pursuant to the law of the case

doctrine because the Amended Complaint is "substantively
identical to the Original Complaint." (Mem. of Law in Support
of Defs.' Mot. to Dismiss 9.) Under that doctrine, a court
adheres "'to its own decision at an earlier stage of the
litigation' unless there are 'cogent' or 'compelling' reasons
not to, such as 'an intervening change of controlling law, the
availability of new evidence, or the need to correct a clear
error or prevent manifest injustice.'" Sanders v. Sullivan, 900
F.2d 601 (2d Cir. 1990) (quoting Doe v. New York City Dept. of
Social Services, 709 F.2d 782, 789 (2d Cir. 1983). The law of
the case doctrine does not control here, however, as the Amended
Complaint alleges materially different and more detailed claims
than the original Complaint, as discussed below.


**The 12(b)(6) Standard**


        In considering a motion to dismiss pursuant to Rule
12(b)(6), the Court construes the complaint liberally,
"accepting all factual allegations in the complaint as true, and
drawing all reasonable inferences in the plaintiff's favor."
Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)
(citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).
Though the court must accept the factual allegations of a
complaint as true, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). In other words, Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

As the Second Circuit has recognized, in Iqbal, the Supreme Court suggested a "two-pronged approach" to evaluate the sufficiency of a complaint. Iqbal, 129 S.Ct. at 1949-50. See also Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). A court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950. "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden, 594 F.3d at 161 (quoting Iqbal, 129 S.Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (internal quotation marks omitted).

9

In addressing the present motion, the Court is mindful that Bellezza is proceeding pro se.  "Since most pro se plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel."  Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000).  Courts "interpret [pro se pleadings] 'to raise the strongest arguments that they suggest.'"  McPherson v. Coombe, 174 F.3d 276, 279 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

## I.  Plaintiff's Interference with Legal Mail Claims

### A.  Right of Access to Courts

It is well established that prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts.  Bounds v. Smith, 430 U.S. 817, 822 (1977); see also Lewis v. Casey, 518 U.S. 343, 346 (1996);

10

Bourdon v. Loughren, 386 F.3d 88, 92-93 (2d Cir. 2004); Davis v. Goord, 320 F.3d 346, 351-52 (2d Cir. 2003).  The Supreme Court has alternately grounded this right in the constitutional guarantees of equal protection, due process, privileges and immunities, and the right to petition the government for grievances.  Bourdon, 386 F.3d at 92.

> Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong.  However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim without which a plaintiff cannot have suffered injury by being shut out of court.

Christopher v. Harbury, 536 U.S. 403, 414-15 (2002).

The right of access to courts gives rise to a number of derivative rights, including the right of inmates to receive legal mail without interference.  Davis, 320 F.3d at 351 ("Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."); Collins v. Goord, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (noting that "[t]he constitutional right of access to the courts gives rise to a number of derivative rights").  This right requires state prisons "to give prisoners a reasonably adequate

11

opportunity to present claimed violations of fundamental constitutional rights to the courts." Bounds, 430 U.S. at 825.

"To state a claim for denial of access to the courts--in this case due to interference with legal mail--a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Davis, 320 F.3d at 351 (internal quotation marks and citations omitted).  See also Collins, 581 F. Supp. 2d at 573 (finding plaintiff must show actual injury, that is that "the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." (citing Lewis, 518 U.S. at 353)). "Unlike prisoners who bring a claim for the violation of a constitutionally protected right, who have standing to assert that right even if the denial of the right did not cause an 'actual injury,' prisoners who bring a claim for the violation of a derivative right of access to the courts must demonstrate 'actual injury' in order to have standing." Id. (citing Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001)).  This requirement "ensures that courts provide relief to claimants only when they have suffered or will imminently suffer actual harm and prevents courts from undertaking tasks assigned to the other political branches." Id. (citing Lewis v. Casey, 518 U.S. 343, 349 (1996)).

In the context of the derivative right to legal libraries in prisons, the Supreme Court has articulated that the actual injury requirement "is not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354. In Lewis, the Court noted that right does "not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Id. at 355. Instead, the right requires that inmates be provided with what they need to "attack their sentences, directly or collaterally, and . . . challenge the conditions of confinement," id., and not be impeded in these actions. Claims that have provided the basis for actual injury in access to courts cases include direct appeals of convictions, "'civil rights actions'—i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" Id. at 354 (citations omitted). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 355 (emphasis in original). See also Hoffenberg v. Bodell, No. 01 Civ. 9729 (LAP), 2002 WL 31163871 (S.D.N.Y. Sept. 30, 2002) (rejecting argument that statute of limitations should be tolled in legal malpractice action due to prison official's depriving

13

inmate of related legal documents (citing <u>Lewis</u>, 518 U.S. at 355)).

Here, the Amended Complaint alleges that Clark read, photocopied, and withheld mail from the Court Appointed Settlement Administrator in <u>Wilson v. Airbourne</u> (AC ¶ 11), that Clark and Holland withheld the Settlement Check (<u>id.</u> ¶ 15), that on another separate occasion Defendant Clark opened, read, copied, and withheld legal correspondence in connection with a class action of "TRACK 1 AWP" (<u>Id.</u> ¶ 18.), that the practice of opening, reading, copying, and withholding legal correspondence was "wide spread" and included the same with regard to legal mail related to the class action of <u>Wilson v. Airbourne</u> sent to inmates Marcelo Rogriguez, DIN#: 76-A-3247, Francisco Jaureuqi, DIN#: 87-A-2530, and Juan Martinez, DIN#: 90-A-3108.  (<u>Id.</u> ¶ 14.)  The Amended Complaint additionally alleges that Plaintiff did not recover what he otherwise would have, namely the check, because of interference with his mail and that the deprivation of documents relating to the "TRACK 1 AWP" class action prevented his participation in that suit.  In sum, Plaintiff alleges that Clark and Holland effectively deprived him of various legal materials and that such deprivation impeded his ability to successfully pursue and receive remedies in two civil class actions, as well as unnamed others.

14

Bellezza's allegation that he is precluded from participating in future unspecified class-action litigation is insufficient to state an actual injury. Bellezza v. Holland, 730 F. Supp. 2d 311, 316 (S.D.N.Y. 2010); see also Christopher v. Harbury, 536 U.S. 403 (dismissing access to courts claim where plaintiff did not identify underlying cause of action as insufficiently alleging actual injury); Amaker v. Haponik, No. 98 Civ. 2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999) (granting motion to dismiss access to courts claim for failure to demonstrate actual injury).  The remainder of Plaintiff's access to courts claim is based on allegations regarding the Airbourne and Track 1 AWP class actions.  A broad range of causes of action could be understood to fall within the right of access to courts guaranteed to inmates, and it might well be reasonable to permit a greater range of claims with regard to interference with legal mail than with respect to the affirmative provision of legal materials in a prison library or otherwise--that is, where an inmate seeks to avoid interference with a claim, not to gain tools (and use state resources) to pursue one.  However, the class actions at issue here do not fall within the range of those previously recognized, and the Court will not today expand the right so as to encompass them. Plaintiff's access to courts claim is therefore dismissed.

15

**B.   First Amendment Right to Free Flow of Mail**

"In addition to the right of access to the courts, a
prisoner's right to the free flow of incoming and outgoing mail
is protected by the First Amendment." Davis, 320 F.3d at 351.
A prisoner's mail may only be restricted to further "'one or
more of the substantial governmental interests of security,
order, and rehabilitation'" and the restriction "'must be no
greater than is necessary or essential to the protection of the
particular governmental interest involved.'" Id. (quoting
Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986)).  The
First Amendment protects prisoners' access to mail directly,
unlike the right of access to courts, which protects prisoners'
access to mail only derivatively and with respect to given
claims.

A prisoner has a right to be present when his legal
mail is opened, but "an isolated incident of mail tampering is
usually insufficient to establish a constitutional violation."
Id.  (citing Wolff v. McDonnell, 418 U.S. 539, 574-76 (1974);
Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975);
Washington, 782 F.2d at 1139).  Rather, an inmate must show that
prison officials "regularly and unjustifiably interfered with

16

the incoming legal mail." Id. When balancing the competing interests implicated by restricting prison mail, "courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Id. (citing Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Washington, 782 F.2d at 1138-39; Davidson v. Scully, 694 F.2d 50, 53 (2d Cir. 1982)).

In Washington v. James, 782 F.2d 1134, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." Davis, 320 F.3d at 351 (citing Washington, 782 F.2d at 1139); see also Turner v. Safley, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

As noted above, the Amended Complaint alleges that Clark read, photocopied, and withheld mail from the Court Appointed Settlement Administrator in Wilson v. Airbourne (AC ¶ 11), that Clark and Holland withheld the Settlement Check (id. ¶

17

15), that on another separate occasion Defendant Clark opened,
read, copied, and withheld legal correspondence in connection
with a class action of "TRACK 1 AWP" (Id. ¶ 18.), that the
practice of opening, reading, copying, and withholding legal
correspondence was "wide spread" and included the same with
regard to legal mail related to the class action of Wilson v.
Airbourne sent to inmates Marcelo Rogriguez, DIN#: 76-A-3247,
Francisco Jaureuqi, DIN#: 87-A-2530, and Juan Martinez, DIN#:
90-A-3108.  (Id. ¶ 14.)

        The AC further alleges that Holland and Clark
fabricated rules "requiring inmates to get permission from the
facility superintendent before corresponding with court
appointed settlement administrators, participating in civil
litigation, or receiving court authorized settlement funds" (id.
¶ 17), and that Holland created a policy requiring inmates to
"prove their legal claims to [the Department of Correctional
Services] before raising same in a legal claim" (id. ¶ 18).

        Plaintiff has adequately plead that Defendants engaged
in an ongoing practice of censorship.  Defendants make no effort
to justify the alleged interference with the Plaintiff's mail in

18

terms of a substantial governmental interest.[1]   Plaintiff has therefore made sufficient allegations to state a First Amendment claim for interference with legal mail, and Defendants' motion to dismiss that claim is accordingly denied.

## II. Defendants' Qualified Immunity Claim

Defendants argue that they are entitled to qualified immunity because it was reasonable for them to believe that their actions did not violate clearly established law.

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  While not mandatory, Courts utilize the two-step analysis articulated in Saucier v. Katz, 533 U.S. 194, 201 (2001), when appropriate in assessing a claim of qualified immunity.  Pearson v.

---

[1]     Because Plaintiff alleges that the check and related correspondence was confiscated and as was legal mail relating to the "Track 1 AWP" litigation, Defendants cannot successfully argue that the Amended Complaint alleges a mere delay in the plaintiff's receipt of the mailed items.  See Davis, 320 F.3d at 352 ("Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'") (quoting Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y.)).

Callahan, 55 U.S. 223, 129 S.Ct. 808, 821 (2009) ("Because the
two-step Saucier procedure is often, but not always,
advantageous, the judges of the district courts and the courts
of appeals are in the best position to determine the order of
decisionmaking that will best facilitate the fair and efficient
disposition of each case."). Qualified immunity is appropriate
either if Plaintiff's allegations, if true, do not establish a
constitutional violation, or if the right was not clearly
established at the time it was allegedly infringed. See
Pearson, 55 U.S. 223, 129 S.Ct. at 815-16; Taravella v. Town of
Wolcott, 599 F.3d 129, 133 & n.2 (2d Cir. 2010) (citations
omitted).

> To be clearly established, "[t]he contours of the
> right must be sufficiently clear that a reasonable
> official would understand that what he is doing
> violates that right." Anderson v. Creighton, 483 U.S.
> 635, 640 (1987). An official is therefore entitled to
> immunity if his action was "objectively legally
> reasonable in light of the legal rules that were
> clearly established at the time it was taken." X-Men
> Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999)
> (citing Anderson, 483 U.S. at 639) (quotation marks
> and alterations omitted).

Taravella, 599 F.3d at 133. In determining whether a
particular right was clearly established, courts look to:
(1) whether the right in question was defined with
"reasonable specificity"; (2) whether the decisional law of
the Supreme Court and the applicable circuit court support

the existence of the right in question; and (3) whether
under preexisting law a reasonable defendant official would
have understood that his or her acts were unlawful. See
Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991).

It is clear that prohibiting a prisoner from receiving
legal mail may violate the First Amendment.  Defendants'
contention that "they could not know that Plaintiff had a
constitutionally protected ability to participate in class
action lawsuits" (Def. Mem. Of Law in Support of Def. Mot. to
Dismiss 22) misses the point.

On a number of occasions prior to the events in
question, the Supreme Court has recognized that prisoners have a
protected First Amendment right in sending and receiving
correspondence.  See, e.g., Thornburgh, 490 U.S. at 407, 415;
Procunier v. Martinez, 416 U.S. 396, 406, 415 (1974).   So, too,
has the Second Circuit.  See, e.g., Davis, 320 F.3d at 351;
Allen v. Coughlin, 64 F.3d 77, 81 (2d Cir. 1995); Purcell v.
Coughlin, 790 F.2d 263, 264 (2d Cir. 1986); Washington, 782 F.2d
at 1139.  Both the Supreme Court and the Second Circuit have
held that inmates' right to receive mail may be impinged only by
regulations that are "reasonably related to legitimate
penological interests." See Turner, 482 U.S. at 89; Davidson v.

21

Mann, 129 F.3d 700, 701 (2d Cir. 1997) (noting that prison regulation limiting stamps available to prisoners for non-legal mail was subject to Turner analysis and upholding the regulation under Turner); see also Nicholas v. Miller, 189 F.3d 191 (2d Cir. 1999) (vacating and remanding for failure to apply Turner factors to prison regulation allegedly impinging First Amendment rights). The Second Circuit has on numerous occasions reversed district court decisions dismissing a prisoner's claim that his right to send or receive mail was being violated. See Allen, 64 F.3d at 79-80 (reversing dismissal of claim relating to prison regulaitons forbidding the receipt of newspapers other than those sent directly from the publisher or an approved distributor); Purcell, 790 F.2d at 265 (reversing dismissal of claims relating to the interference of inmate's outgoing and incoming mail); Washington, 782 F.2d at 1139(same).

Given the existing precedent, Defendants should have been aware that Plaintiff's First Amendment right to receive mail could only be impinged by reasonable regulations connected to the legitimate concerns of prison officials. See Amaker v. Haponik, No. 98 Civ. 2663 (JCK), 1999 WL 76798 (S.D.N.Y. Feb. 17, 1999) (addressing issue similar to that here and finding that right to receive mail absent reasonable prison regulation was well established for purposes of qualified immunity inquiry,

22

independent of access to courts claim).[2]  Defendants have failed

to explain how their actions comport with well-established First

Amendment law or how reasonable officials should have so

concluded, and they fail to cite any case law in support of

their argument.


            Furthermore, as in Amaker v. Haponik, at this stage of

the proceedings it is premature to find that Defendants are

entitled to qualified immunity.  See Amaker v. Haponik, No. 98

Civ. 2663, 1999 WL 76798 at *8.  The Court has no information

bearing on the Turner factors from which it could determine

whether the defendants violated any clearly established

constitutional right of Plaintiff.  Defendants have not provided

the Court with information concerning: 1) whether there is a

legitimate penological justification for the alleged policy

regarding correspondence with court appointed settlement

administrators, 2) whether there are alternative means by which

Plaintiff could exercise his First Amendment rights, 3) whether

an accommodation of Plaintiff's right to receive mail would have

an adverse impact on guards, other inmates, and prison resources

---

[2]     As here, Amaker involved alleged interference with an inmate's legal
mail, assertedly in violation of prison regulations; Plaintiff alleged both
an access to courts claim and a First Amendment free flow of legal mail
claim; and Defendants asserted qualified immunity on a motion to dismiss.
No. 98 Civ. 2663, 1999 WL 76798.  Similarly, the court in Amaker was not in
possession of the relevant regulations, and Defendants failed to provide
information regarding whether a legitimate penological justification existed
for the alleged interference.  Id. at *8.  The Court adopts Judge Koeltl's
reasoning in Amaker in large part here.

generally, or 4) whether obvious, easy alternatives to the
restriction exist.  Nor has the Court been presented with
adequate information regarding the regulations at issue in this
case, which Plaintiff asserts Defendants' actions violated (AC ¶
21), or how these regulations were applied to Plaintiff.  A
finding of qualified immunity is therefore premature.  See,
e.g., Amaker v. Haponik, No. 98 Civ. 2663, 1999 WL 76798, at *8
(finding qualified immunity defense premature on a motion to
dismiss); Burgess v. Goord, No. 98 Civ. 2077, 1999 WL 33458, at
*6 (S.D.N.Y. Jan. 26, 1999) (same); Thomas v. Coombe, No. 95
Civ. 10342, 1998 WL 391143, at *5 (S.D.N.Y. July 13, 1998)
(same); Whitley v. Westchester Correctional Facility, No. 97
Civ. 0420, 1997 WL 659100, at *9 (S.D.N.Y. Oct. 22, 1997)
(same).

        Defendants' motion to dismiss Plaintiff's First
Amendment claim based on qualified immunity is therefore denied
without prejudice.

24

## Conclusion

Upon the conclusions set forth above, Defendants'
motion to dismiss Plaintiff's denial of access to courts claim
is granted, and Defendants' motion to dismiss Plaintiff's First
Amendment claim is denied.

It is so ordered.

New York, NY
July //, 2011

ROBERT W. SWEET
U.S.D.J.

25